Devin A. McRae, SBN 223239
  *dmcrae@earlysullivan.com*
Jeremy Gray, SBN 150075
  *jgray@earlysullivan.com*
EARLY SULLIVAN WRIGHT
  GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

Attorneys for Plaintiffs
JOSH GOLDIN and
OUROUBOUROUS PRODUCTIONS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| JOSH GOLDIN, an individual; and OUROUBOUROUS PRODUCTIONS, a California corporation, | Case No. 2:25-cv-12306 |
| Plaintiffs, | **Complaint for** |
| v. | **1.** **Breach of Contract;**<br>**2.** **Breach of the Implied Covenant of Good Faith and Fair Dealing;** |
| MATW, LLC, a North Carolina, limited liability company, and IRIS INDIE STUDIOS LLC, a North Carolina limited liability company; and JOSHUA RUSSELL, an individual, Does 1-10, inclusive, | **3.** **Fraud; and**<br>**4.** **Declaratory Relief** |
| Defendants. | **Demand for Jury Trial** |

5833482.1

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Josh Goldin ("Goldin") brings this action against MATW, LLC ("MATW"), Iris Indie Studios LLC ("Iris") and Joshua Russell ("Russell") and Does 1-10 inclusive (collectively, "Defendants") and in support thereof alleges as follows:

### INTRODUCTION AND GENERAL ALLEGATIONS

1. Producer Russell, through production companies MATW and Iris (collectively, the "Producers"), hired Goldin to direct the independent film *May and the Woodsman* (the "Film") with a budget of $1.5 million.

2. Goldin is an experienced and talented writer and director based in Los Angeles.

3. It turns out the Producers are bush league, (a) having made material misrepresentations about themselves and the project to induce Goldin to provide his services, and (b) now, due to their fiscal shenanigans, seeking to wreck what was en route to be a terrific Film. Goldin agreed to direct the Film based on Russell's misrepresentations that the Producers intended to spend the entire $1.5 million budget on the production of the Film, that the Producers were producing the Film for the purpose of creating a first class, feature-length, theatrical motion picture which would generate lucrative back end revenues, and that the Producers would allow Goldin to devote his considerable talents to the completion of the project without their improper interference. These misrepresentations were made in conversations and emails between Russell and Goldin between August 1, 2025 and October 3, 2025. In reality, and unknown to Goldin, Russell and the other Producers were, on information and belief, engaged in a scheme to divert money from the Film's budget to a new "virtual reality" studio for their production company (Iris) and into their own pockets and also to improperly obtain financial incentives from the State of North Carolina and finally to achieve some of these ends by cutting off Goldin's rights to participate in the Film's "back end" revenues. Goldin has been damaged by this fraud by Russell and the Producers as alleged below.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

4.      As part of these misrepresentations, Russell provided Goldin with a "Company Agreement" which, by its terms, entitled him to deliver the services customarily provided by directors of "first class, feature-length, theatrical motion pictures." Goldin was to be paid fixed compensation of $10,000; adjustable compensation of $90,000; and contingent compensation equal to at least 5% of all gross revenues (minus a distribution fee to Iris) along with an additional 25% of the producer's net receipts ("Agreement"). However, the other terms of the Agreement which purported to render the Film a work made for hire and to limited Goldin's remedies were included in furtherance of Defendants' fraud and are therefore void and Defendants are estopped from enforcing these provisions.

### *Principal Photography*

5.      The Film was shot, in part, on location in the hills of Boone County, North Carolina. Goldin travelled to the location from his home in Southern California. From the beginning, the Producers breached their obligations to provide the contractually required and promised funds for principal photography. For example, during the three weeks of shooting on private land, the Producers failed to provide even basic porta-potties for the cast and crew. The disgusting single toilet facility provided was primitive and unsanitary, merely a bucket in a zippered tent.

6.      The Producers, in the Agreement and otherwise, represented to Goldin that they would provide him with travel and lodging consistent with a "first class, feature-length, theatrical motion picture." In breach of this Agreement and these representations, the Producers required Goldin to move housing every week without even the benefit of early check-in. As such, each Sunday the Film's "first class" director was left without a place to work from the 9:30 am check-out time until the 4:30 pm check-in.

7.      In an apparent effort to conceal the misappropriation of budgetary funds, Producers employed a "penny smart, pound foolish" hiring strategy which directly caused scheduling delays. For example, Producers elected not to hire a script

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

supervisor or anyone dedicate to monitoring continuity. (A script supervisor is a professional who keeps records as to how scenes are covered and which "takes" the director preferred, drastically reducing the amount of duplicative effort expended in post-production as the editor and the director are not forced to review and re-categorize the footage.) On one particularly egregious occasion, Producers hired an inexperienced property master who simply forgot to bring essential props to set, requiring Goldin to improvise script changes on the spot, at great delay to the schedule and detriment to the final work.

8.      The Producers also breached their express and implied promises that Goldin would be free to deploy his directing talents by attempting to handcuff him by insisting he use the services of an inexperienced North Carolina based editor. When Goldin expressed concern with this selection and that he assumed given the budget the Producers would hire a competent Los Angeles based editor, the Producers insisted the local editor be given a trial run. The local editor's cuts during filming were wholly inadequate and unusable. Even worse, when, in post-production, Goldin commenced work on his director's cut of the film, he (and his Los Angelese based editor who was eventually hired) discovered that the local editor had failed properly sync sound, to properly import files and to manage the ultra-high-resolution files. These failures – caused by the Producers – set back post-production by weeks.

9.      During production, and in furtherance of their fraud, the Producers also devoted funds which should have been used for, among other things, sanitary bathrooms, rather than to create what they called a "Virtual Reality" stage in an empty North Carolina warehouse which they admitted would be a separate business venture *for other movies*. The Producers insisted, (apparently based on the demands of the Film's investors) that Goldin use the facility even though it made no sense logistically or creatively. The sound was awful (a warehouse without sound proofing) and the Producers' amateurish "VR" operators generated a sequence where the Film's actors absurdly climbed into a car travelling at 50 miles per hour. This facility was

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

5833482.1

**COMPLAINT AND DEMAND FOR JURY TRIAL**

(necessarily) abandoned after the technological incompetence forced Goldin to take the production to an outside set.

10.    Despite these repeated failures, breaches and acts of fraud by the Producers, Goldin finished principal photography on-schedule and on budget.

### *Post-Production*

11.    Prior to the commencement of principal photography, the parties agreed that Goldin would have eight weeks to deliver his director's cut (another false representation that the Producers would abandon).

12.    Yet despite the Producers manifold breaches which had hamstrung Goldin's ability to deliver, and even though the Producers had agreed that he would have eight weeks to deliver his cut, they insisted in a November 4, 2025 meeting that they wanted the post-production schedule to be cut in half, to merely four weeks. Goldin explained that truncating the post-production schedule so aggressively would be impossible. The Producers relented and ultimately agreed that Goldin was to have eight weeks to turn in a "director's cut" until January 7, 2026.

13.    A few weeks later (in furtherance of their fraudulent efforts to remove Goldin from the project), the Producers again insisted that Goldin deliver his director's cut immediately and started demanding (and threatening) that Plaintiff and the editor turn over the Film's "project files"; again, these demands lacked any contractual or legal basis. To calm the situation, Goldin sent the first 44 minutes of his cut of the Film and was told by the Producers that it was "terrific." It was and is.

14.    Nonetheless, and inexplicably, on December 15, 2025, weeks before the January 7 deadline, the Producers sent Goldin a "Notice of Breach" email on behalf of the Producers, demanding, without any factual, legal or contractual basis, and in furtherance of their fraudulent scheme to unlawfully fire Goldin, that Goldin deliver the Film's "project file edit" within five days. In short, having just agreed otherwise, the Producers were now demanding that Goldin deliver his director's cut in only *five days*.

5

**COMPLAINT AND DEMAND FOR JURY TRIAL**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

15. On December 23, 2025, Russell on behalf of the Producers, materially breached the parties' Agreement by sending to Goldin a "Notice of Employment Termination" purporting to terminate Goldin work as a director "effective immediately." This breach of contract by the Producers will and has damaged Goldin in the amount of at least $1 million.

16. Because Goldin was induced to agree to direct the Film by fraudulent misrepresentations by Russell and the other Producers, Defendants are estopped and barred from seeking to enforce the terms inserted to further their fraud, *viz.*, the limitation of remedies and the work made for hire provisions.

## PARTIES

17. Plaintiff Goldin is an individual who resides in Los Angeles, California.

18. Plaintiff Ouroubourous Productions ("Ouroubourous") is a California corporation organized and existing under the laws of the State of California with its principal place of business in Los Angeles, California and is Goldin's so-called "loan out" company. Goldin and Ouroubourous are referred to herein collectively as "Plaintiff" or "Goldin."

19. On information and belief, MATW is a limited liability partnership organized and existing under the laws of the State of North Carolina.

20. On information and belief, Russell is an individual residing in North Carolina and he is not a resident of the State of California.

21. On information and belief, Iris is a corporation organized and existing under the laws of North Carolina with its headquarters in North Carolina.

22. Plaintiff is ignorant of the true names or capacities of the defendants sued herein under the fictious names Does 1-10. Plaintiff is informed and believes, and based thereon alleges, that defendants Does 1-10, inclusive, are individual or entities who are, in whole or in part, legally responsible for the damages claimed by Plaintiff, but whose identities and capacities are, at the time of filing of this Complaint, unknown to Plaintiff, who therefore sues them by fictitious names. Plaintiff will

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

amend this Complaint when the true identities and capacities of Does 1-10 become known to Plaintiff.

23.    Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the Defendants sued herein was working in concert with, and was the agent and employee of, each of the remaining Defendants. Plaintiff alleges that each and every Defendant alleged herein ratified the conduct of each and every other Defendant. Plaintiff further alleges that at all times said Defendants were acting within the purpose and scope of such agency and employment.

## JURISDICTION AND VENUE

24.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

25.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq.

26.    Venue lies in this District under 28 U.S.C. §§ 1391(b). A substantial part of the acts or omissions giving rise to the claims alleged occurred in Los Angeles, California.

27.    This Court has personal jurisdiction over Defendants because they, and each of them, either made, or conspired to make, fraudulent misrepresentations to Goldin while he was in California to induce him to agree to direct the Film and to convince him to travel to North Carolina. Defendants also entered into more than one agreement with Goldin while he was in California (i.e., a Company Agreement and an Option/Purchase Agreement). Defendants also knew and planned that the post-production work on the Film would take place in Los Angeles. Furthermore, the email breaching the contract was sent to Goldin in Los Angeles. These contacts by Defendants, and each of them and in collaboration, readily meet the "minimum contacts" test for personal jurisdiction.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

## FIRST CLAIM FOR RELIEF

### (For Breach of Contract Against All Defendants)

28.     Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 - 27 as if fully set forth herein.

29.     Goldin and the Producers were and are parties to the Agreement whereby the Producers agreed that Goldin would perform all directing services (including delivering a director's cut) for the Film, that the budget would be $1.5 million, that Goldin would be provided with travel, lodging and facilities consistent with the production of a "first class, feature-length, theatrical motion picture," and that Goldin would receive the fixed, adjustable and contingent compensation as alleged above in paragraph 4. However, because of the fraud, the terms of the Agreement relating to any limitation of Goldin's remedies and/or which purport to create a work made for hire are void, voidable and/or unenforceable.

30.     Goldin has performed all services, duties and obligations under the Agreement except those which were or have been excused by Defendants and/or which Defendants have prevented him from accomplishing, including, without limitation, by terminating him as the Film's director.

31.     Defendants breached the Agreement in the various ways alleged above, including without limitation, by their failure to fund the production of the Film in the manner represented and by purporting to terminate Goldin's services via a December 23, 2025 email without good cause and in service of the fraudulent scheme as alleged above. The Company Agreement provides that the Producers may only terminate Goldin in the event of an "Artist Default" which is defined as "a failure or refusal of Artist to comply with a material term hereof or a statement by Arist or Artist's Agent that Artist will not perform any material term hereof." At no point did Goldin fail to comply with a material term or make any statement that he will not perform any material term.

32.     Goldin has been damaged by the Producers' breaches in at least the

5833482.1

**COMPLAINT AND DEMAND FOR JURY TRIAL**

following ways: (a) he has been deprived of adjustable compensation in the amount of at least $30,000; (b) he has been deprived of his right and ability to the contingent compensation as alleged above which will be proven at trial; (c) he devoted significant time and effort to directing the Film and his wrongful and unlawful termination will cause damage to his reputation and deprive him of the precedents which flow from a completed project in the entertainment industry. Goldin's total damages are at least $1 million. The reason for Defendants' breach is, on information and belief, that Russell and Goldberg misappropriated funds from the Film's budget. *Budget documents indicate that Russell and Goldberg funneled over $400,000 of production funds into an unrelated business venture VR studio. This represented over 25% of the Film's budget.* The Producers also appear to have appropriated to themselves a $150,000 direct payment on top of the $52,500 "Executive Producer Fee" they had already taken.

33.     Goldin is entitled to enforce the attorneys' fees clause in the Company Agreement and, because of their fraud, Defendants are not.

## SECOND CLAIM FOR RELIEF

### (For Breach of The Implied Covenant of Good Faith and Fair Dealing Against All Defendants)

34.     Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 - 33 as if fully set forth herein.

35.     Goldin and the Producers were parties to the Agreement as alleged above.

36.     The Agreement contains an implied covenant of good faith and fair dealing.

37.     As alleged above, Goldin fully performed his obligations under the Agreement, except such obligations which were excused by Defendants or which he was prevented from accomplishing by Defendants as alleged above.

38.     Defendants have breached the Agreement as alleged above. These

**COMPLAINT AND DEMAND FOR JURY TRIAL**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

breaches, to the extent any are not found to violate express terms of the parties' Agreement, constitute a breach of the implied covenant of good faith and fair dealing.

39. Goldin has been damaged by Defendants' breach of the implied covenant of good faith and fair dealing in an amount to be proven at trial as alleged above in an amount of at least $1 million.

40. Goldin is also entitled to equitable relief on account of Defendants' breach of the implied covenant of good faith and fair dealing, including an order from this Court that Goldin be reinstated as director of the film and that he complete his Director's cut of the Film.

41. By virtue of the fraud as alleged above and elsewhere in this Complaint, Russell and the other Producers are estopped to limit Goldin's remedies for their breach of the contract, including any effort to limit his right to seek equitable relief and reinstatement.

## THIRD CLAIM FOR RELIEF

### (For Fraud Against All Defendants)

42. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 - 41 as if fully set forth herein.

43. Russell, in concert and in collaboration with the other Producers, made the misrepresentations of material facts to Goldin as alleged in paragraph 3 and elsewhere above. These misrepresentations were such that they were likely to mislead and did in fact deceive Goldin as alleged above.

44. The misrepresentations were made by Russell (in concert with the other Producers) with the intent to deceive Goldin because, among other things, they knew the statements were false when they were made.

45. Plaintiff actually and reasonably relied on the misrepresentations.

46. Goldin was damaged by the misrepresentations in at least the following ways: (a) he has been deprived of adjustable compensation in the amount of at least $30,000; (b) he has been deprived of his right and ability to the contingent

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5833482.1

10

COMPLAINT AND DEMAND FOR JURY TRIAL

compensation as alleged above which will be proven at trial; (c) he devoted significant time and effort to directing the Film and his wrongful and unlawful termination will cause damage to his reputation and deprive him of the precedents which flow from a completed project in the entertainment industry. Goldin's total damages are at least $1 million.

47.    Defendants have breached the contract as alleged in the First Claim for Relief and otherwise in this Complaint. These breaches constitute a breach of the implied covenant of good faith and fair dealing.

48.    By virtue of the fraud as alleged above and elsewhere in this Complaint, Russell and the other Producers are estopped to limit Goldin's remedies for their breach of the contract, including any effort to limit his right to seek equitable relief and reinstatement.

49.    Defendants acted with fraud, malice, oppression and willfully and thus Goldin is entitled to an award of punitive damages.

### FOURTH CLAIM FOR RELIEF

### (For Declaratory Relief Against All Defendants Regarding Copyright (17 U.S.C. §§ 101, 201(a), 204(a) & 28 U.S.C. §§ 2201-2202 )

50.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 - 48 as if fully set forth herein.

51.    An actual and present controversy exists between Goldin and Defendants regarding allegations regarding the breach of the contract, Defendants' fraud, and Goldin's ownership of copyrights in the Film and the respective rights and obligations of the parties in these matters. Goldin specifically seeks two declarations by this Court: (a) that any purported work made for hire agreement by Goldin is unenforceable because the Defendants are estopped and barred from enforcing such provision by virtue of their fraud; and (b) that any limitation of remedies contained in the Agreement is unenforceable either because the Defendants are estopped and barred from enforcing such provision by virtue of their fraud.

5833482.1

11

COMPLAINT AND DEMAND FOR JURY TRIAL

52. With respect to the copyright declaration Goldin alleges:

53. Goldin is a professional film director who conceived, directed staged and exercised creative control over the Film, an audiovisual work.

54. Goldin contributed original expression to the Film, including but not limited to the selection and arrangement of shots, pacing, performance direction, staging, visual composition and overall artistic vision, each of which constitutes copyrightable authorship under the Copyright Act.

55. Plaintiff's contributions were independently copyrightable and were fixed in a tangible medium of expression through the production of the Film.

56. Defendants are estopped and barred from enforcing or seeking to enforce any agreement whereby Goldin abandoned, assigned or in any way relinquished his copyrights including via a "work made for hire" agreement within the meaning of 17 U.S.C. § 101.

57. Defendants are similarly estopped and barred from any claim that they acquired Goldin's copyrights via any allegation that he was an employee.

58. Plaintiff's contributions to the Film do not fall within any of the nine enumerated categories of specially commissioned works eligible for work made for hire treatment under 17 U.S.C. § 101, and no enforceable written agreement purporting to designate such contributions as a work made for hire exists.

59. Accordingly, Plaintiff seeks a declaration from this Court that he is an author of the Film within the meaning of 17 U.S.C. § 101 and is a copyright owner under 17 U.S.C. § 201(a).

60. Plaintiff also seeks a declaration that, on account of Defendants' fraud, they are estopped and barred from seeking to enforce or enforcing and limitation on Plaintiff's remedies.

## PRAYER FOR RELIEF

WHEREFORE, Goldin prays for relief as follows:

1. For damages in an amount according to proof at trial, but in no event less

5833482.1

12

**COMPLAINT AND DEMAND FOR JURY TRIAL**

than $1 million;

2. For specific performance, that he be reinstated as director of the Film and that he be permitted to complete his director's cut of the Film

3. For an award of reasonable attorneys' fees under the Company Agreement;

4. For a declaration that he is a copyright owner in the Film;

5. For a declaration that Defendants cannot enforce any limitation on his remedies;

6. For costs of suit incurred herein;

7. For an award of punitive damages on the fraud claim; and

8. For such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38 and Local Rule 38-1, Plaintiff Goldin demands a jury trial in the above-entitled action.

Dated:  December 29, 2025

EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP

By:_____
Devin A. McRae
Jeremy Gray
Attorneys for Plaintiffs

5833482.1

13

COMPLAINT AND DEMAND FOR JURY TRIAL